

**SIGNED this 31 day of January, 2017.**

_____
**John T. Laney, III
United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| In re: | * | |
| JAMES PERRY and | * | |
| ARETHA PERRY, | * | Chapter 7 |
| Debtors, | * | Case Number: 16-40207- JTL |
| | * | |
| WALTER KELLEY, TRUSTEE | * | |
| | * | |
| Plaintiff, | * | |
| | * | Adversary Proceeding |
| v. | * | Number: 16-04005 |
| | * | |
| WELLS FARGO BANK, N.A. | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

This Adversary Proceeding is before the Court to rule on the underlying legal issue as a matter of law per the parties' request. The parties filed statements of uncontested facts and briefs. In its brief, the Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), requested oral argument, which was held on January 9, 2017. The issue before the Court is whether the security

1

deed executed by the Husband-Debtor in favor of Wells Fargo is avoidable under 11 U.S.C. § 544(a)(3).[1] The Court now enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

## Findings of Fact

The facts are undisputed, and there is no dispute as to whether the copy of the Security Deed analyzed by the Court is a true and correct copy. On March 26, 2015, the Husband-Debtor, James Perry, executed a security deed in favor of Wells Fargo (the "Security Deed"). The Security Deed purported to transfer a security interest in real property located at 2376 Mount Airy Road, Waverly Hall, Harris County, Georgia (the "Property") to Wells Fargo. On April 23, 2015, it was recorded with the Clerk of Superior Court for Harris County, Georgia. The Husband-Debtor signed the Security Deed as the Borrower. The signature of Aretha Perry, the Wife-Debtor, acting as an official witness, appears on the same page of the Security Deed as the Husband-Debtor's signature. The Wife-Debtor's signature follows the language "Signed, sealed and delivered in the presence of . . ." On the following page, both the signature and notary seal of Jennifer Valadi appear below the bold-faced term "Acknowledgement." Three other documents were recorded with the Security Deed: (1) an Adjustable Rate Rider; (2) a VA Guaranteed Loan Assumption Policy Rider (the "VA Rider"); and (3) a Waiver of Borrower's Rights (the "Waiver") including a Closing Attorney's Affidavit (the "Affidavit"). The Waiver states on the first page that the grantor, the Husband-Debtor, "agrees that the Provisions hereof are incorporated into and made a part of the Security Deed." In the same document, the Affidavit appears on the second page and states the following:

---

[1] All statutory references hereinafter and not otherwise denoted are to Title 11 of the United States Code, which is referred to as "the Bankruptcy Code."

> In closing the above loan, but prior to the execution of the Deed to Secure Debt and 'Waiver of Borrower's Rights' by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the 'Waiver of Borrower's Rights.' . . After said review with and explanation to the Borrower(s), Borrower(s) executed the Deed to Secure Debt and 'Waiver of Borrower's Rights.'

Below this language appears the signature of Valadi as the closing attorney, dated March 26, 2015. On the last page of the Waiver, under the bold-faced term "Acknowledgment," appear the signature and notary seal of Bettie Ferrell and the signature of the Husband-Debtor.

The Debtors filed a joint-petition for Chapter 7 bankruptcy relief on March 15, 2016. On June 28, 2016, the Trustee filed a complaint against Wells Fargo. In his complaint, the Trustee seeks to avoid the security interest held by Wells Fargo under the Security Deed pursuant to § 544. Furthermore, the Trustee seeks to recover the transfer of the Husband-Debtor's interest[2] in the Property or the value of such interest under § 550.

## Conclusions of Law

The basis for the Trustee's avoidance action is his allegation that the Security Deed is patently defective due to the lack of an attesting official witness, which is required by section 44-14-33 of the Official Code of Georgia Annotated ("O.C.G.A.") for recordation of a security deed. The Trustee argues that the "Attestation Page" only contains the signatures of the borrower and an unofficial witness and the notary public's signature and seal on the following page under the term "Acknowledgment" do not satisfy the requirements for proper attestation of

---

[2] The Debtors' Schedule A indicates that only the Husband-Debtor, James Perry, has an interest in the Property. The Wife-Debtor, Aretha Perry, has no interest.

3

a security deed. Relying on the remedial provision of O.C.G.A. § 44-2-18, Wells Fargo contends that the signature of Valadi on the Affidavit accompanying the Waiver recorded with the Security Deed cured any such defect. The Court agrees with Wells Fargo.

The Trustee may use his "strong-arm powers" to "avoid any transfer of the debtor that is voidable by a [hypothetical] bona fide purchaser of real property . . . that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case." 11 U.S.C. § 544(a)(3) (2016). In Georgia, a security deed "must be *attested by or acknowledged before an officer* as prescribed for the attestation or acknowledgement of deeds of bargain and sale; and . . . [it] must also be attested or acknowledged by one additional witness." O.C.G.A. §§ 44-14-33, -61 (effective to June 30, 2015) (emphasis added).[3] If a security deed is duly executed, filed, recorded, and indexed with the Clerk of the Superior Court of the appropriate county, recordation of the deed provides constructive notice to subsequent bona fide purchasers. O.C.G.A. §§ 44-14-33,-61. *See also U.S. Bank Nat'l Ass'n v. Gordon*, 289 Ga. 12, 14 (2011) (applying the notice language in O.C.G.A. § 44-14-33 to the recording of security deeds). Recordation of a patently defective security deed does not provide constructive notice to subsequent bona fide purchasers and has no binding effect on such purchasers. *Trauner v. First Tennessee Bank, N.A. (In re Simpson)*, 544 B.R. 913, 918 (Bankr. N.D. Ga. 2016); *Wells Fargo Bank, N.A. v. Gordon*, 292 Ga. 474, 475 (2013).

---

[3] The Court notes that O.C.G.A. §§ 44-14-33 & -61 were amended in 2015 and went into effect on July 1, 2015. Prior to July 1, 2015, O.C.G.A. § 44-14-61 stated, "In order to admit deeds to secure debt or bills of sale to record, they shall be attested or proved in the manner prescribed by law for mortgages." The requirements for attestation under mortgage law are provided in O.C.G.A. § 44-14-33. The pre-amendment version of O.C.G.A. § 44-14-33 is quoted in the text referencing this footnote and requires "attestation *or acknowledgment*" for the recordation of a security deed. The amended version provides that security deeds must be *attested by* both an official and an unofficial witness to be eligible for recording. It does not allow for "acknowledgment." The Security Deed at issue in this case was executed and recorded prior to the amendments to O.C.G.A. §§ 44-14-33 & -61. Therefore, the Court will apply the pre-amendment versions of those statutes.

Georgia law provides the ability to cure certain defects in the execution of a security deed. Section 44-2-18 of the O.C.G.A. provides:

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44-2-15 and shall testify to the execution of the deed and its attestation according to law. A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

O.C.G.A. § 44-2-18 (2016). In other words, an affidavit of a subscribing official witness must meet the following two-prong test to cure a defective security deed: (1) it must be made before a notary public or another officer as listed in O.C.G.A. § 44-2-15; and (2) it must testify to the execution and attestation of the security deed.

Wells Fargo argues that the Affidavit included in the Waiver meets the requirements of the remedial statute. In support of its argument, Wells Fargo relies on the Eleventh Circuit's decision in *Gordon v. Terrace Mortgage Co. (In re Kim)*, 571 F.3d 1342 (11th Cir. 2009). In that case, Gordon, the Trustee, sought to avoid a security deed executed in favor of Terrace based on the allegation that it was patently defective due to the lack of a notary seal on the attestation page. *Id.* at 1344. The bankruptcy court granted the Trustee's motion for summary judgment and held that the security deed was defective and did not provide constructive notice because it lacked the notary seal of the attesting notary public. *Id.* Furthermore, the bankruptcy court found that an affidavit, which was included in the same single-page document as a waiver of borrower's rights rider recorded with the security deed, did not satisfy the requirements of the

5

remedial statute because the affidavit only testified to the execution of the security deed and not to its attestation. *Id.* The Eleventh Circuit reversed the bankruptcy court and determined that the affidavit served as testimony of the execution *and attestation* of the Security Deed. *Id.* at 1346. Therefore, the affidavit "substantially complie[d]" with the requirements of O.C.G.A. § 44-2-18 to cure the defect. *Id.*

In reaching its decision, the court analyzed the language of both the waiver of borrower's rights rider and the affidavit. *Id.* at 1344-46. The waiver of borrower's rights stated that its provisions "[were] incorporated into and made part of the Security Deed." *Id.* at 1344. The affidavit stated the following:

> In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights." . . After said review with and explanation to the Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

*Id.* at 1345-46.

The court concluded that "the Affidavit was specifically incorporated into and became part and parcel of a single document comprising, *inter alia,* the Security Deed and the Affidavit, all of which were recorded together in the deed book." *Id.* at 1346. It cited several reasons for its conclusion: (1) "[t]he document that contains the Affidavit was incorporated into the Security Deed by specific language in the Waiver of Borrower's Rights Rider that appears on the same page as the Affidavit;" (2) the document containing the waiver of borrower's rights rider and the

6

affidavit identifies the security deed at issue and was recorded with the security deed; and (3) the definition section of the security deed "expressly incorporates all Riders, including expressly the 'Waiver of Borrower's Rights/Closing Attorney Affidavit." *Id.*

Gordon, the Trustee, argued that the affidavit did not cure a defect in attestation because the affidavit referred only to the execution of the security deed and not its attestation. *Id.* at 1347. The Eleventh Circuit rejected this argument. *Id.* It determined that "in the Affidavit, the closing attorney testified to a certain fact, and that fact was the execution of this particular Security Deed with its attestation." *Id.*

This Court notes that at the time the Security Deed at issue in the instant case was executed, "Georgia law required signatures of both an official witness and an unofficial witness, *and allowed for acknowledgment as well as attestation as alternate means for authentication.*" In re Simpson, 544 B.R. at 918 (citing O.C.G.A. § 44-14-33 (2004)).  Therefore, the recordation of the Security Deed would provide constructive notice to subsequent bona fide purchasers if it was attested *or* acknowledged by both an official and unofficial witness. It is undisputed that the attestation by the unofficial witness, the Wife-Debtor, was proper and absent defect. In arguing that the Security Deed is defective because there is only one attesting witness, the Trustee admits that the official witness, Valadi, signed an "Acknowledgment." However, the fact that Valadi may have signed an "Acknowledgment" is not the end of the discussion. Assuming arguendo that Valadi did sign an "Acknowledgment," the Court must then determine whether Valadi's "Acknowledgment" was proper or patently defective, and if it is defective, whether the Affidavit recorded with the Security Deed cured any such defect in the Acknowledgment.

In *Trauner v. First Tennessee Bank, N.A. (In re Simpson)*, the bankruptcy court applied the version of the statute allowing for acknowledgment because the security deed at issue was

7

executed prior to the amendment to O.C.G.A. § 44-14-33. 544 B.R. at 918.  Trauner, the Trustee, sought to avoid a security deed alleging it was patently defective due to its lacking the attestation or acknowledgment of an official witness. *Id.*  The signature page of the security deed contained two distinct sections: (1) the top half of the page with sections for the debtor-borrower's signature and two lines for the signatures of the attesting witnesses; and (2) the bottom half of the page with an acknowledgment clause. *Id.* at 916.  Only one witness signed under the "attestation" portion of the security deed. *Id.*  The signature and seal of a notary public acting as the official witness appeared below the acknowledgment clause.[4] *Id.* at 916-17.  However, the notary public failed to include the date of his acknowledgment. *Id.* at 917.  Under O.C.G.A. § 45-17-8.1(a) & (b), a notary public must record the date of an acknowledgment of a security deed but is not required to do so for an attestation of security deed. O.C.G.A. § 45-17-8.1(a)-(b) (2016); *In re Simpson*, 544 B.R. at 920.  First Tennessee argued that the notary's signature was an attestation rather than an acknowledgment and the location of the signature does not matter. *Id.* at 918.  The bankruptcy court determined that the signature of the official witness was an attempted acknowledgment rather than an attestation because his signature appeared within the "certificate of acknowledgment." *Id.* at 919.  Therefore, the court concluded that the failure of the notary public to insert the date of the acknowledgment in his signature invalidated his acknowledgment and the security deed was patently defective.[5] *Id.* at 920.

---

[4] The notary public's signature appeared below the following language: "Before me on this ___ day . . . personally appeared [the Debtor] who *acknowledged* that he/she/they signed this Georgia Deed to Secure Debt as his/her/their own act." *In re Simpson*, 544 B.R. at 917, 19.  The bankruptcy court determined that "[t]his language indicates a "certificate of acknowledgment." *Id.* at 919.

[5] The Trustee in the instant case relies on *In re Simpson* to argue that the Security Deed is patently defective because it lacks two attesting witnesses.  However, the bankruptcy court in *In re Simpson* did not determine the security deed at issue was patently defective because the official witness signed an acknowledgment and failed to sign on the attestation page.  Rather, the court came to such a conclusion because the acknowledgment made by the official witness was invalid due to the failure to include the date of the acknowledgment as was required by Georgia law. *In re Simpson*, 544 B.R. at 920.  Therefore, the security deed was patently defective because it contained only a single attestation by an unofficial witness and no attestation or acknowledgment by an official witness. *Id.*  It failed to meet

The court also determined that the remedial statute of O.C.G.A. § 44-2-18 was not satisfied by a waiver page recorded with the security deed. *Id.* at 921. The waiver page was distinguishable from the waiver of borrower's rights in *In re Kim* because "[n]o subscribing witness affidavit was included." *Id.* The court found that nothing in the waiver suggested testimony as to the execution and attestation of the security deed. *Id.*

The conclusion of the bankruptcy court in *In re Simpson* suggests that any acknowledgment made by Valadi was not valid because of Valadi's failure to include the date of her acknowledgment on the Security Deed. However, in accordance with the holding and reasoning of the Eleventh Circuit's decision in *In re Kim*, this Court holds that the Affidavit recorded with the Security Deed substantially complies with the requirements of O.C.G.A. § 44-2-18 to cure any defect alleged by the Trustee. The Affidavit contains the signature of the subscribing witness, Jennifer Valadi, and it is dated March 26, 2015, which is the date the Security Deed was executed. The Affidavit was made before a notary public, which is evident by the signature and notary seal of Bettie Ferrell on the last page of the document. Therefore, the Affidavit satisfies the first prong of O.C.G.A. § 44-2-18.

The Trustee argues that testimony to the attestation of the Security Deed is "entirely absent" from the Affidavit, and therefore, the Affidavit does not satisfy the second prong of the remedial statute. This Court rejects this argument based on the Eleventh Circuit's holding and reasoning in *In re Kim*. The language in the Waiver and the accompanying Affidavit is the same language analyzed by the Eleventh Circuit. The Waiver incorporates itself by language into the Security Deed. It is obvious that the Waiver is referring to the Security Deed executed by the

---

the requirements of O.C.G.A. § 44-14-33 to be eligible for recordation. *Id.* The invalid acknowledgment by the official witness, or rather the lack of a proper acknowledgment or attestation by an official witness, was the patent defect. *Id.*

Husband-Debtor in favor of Wells Fargo. The Security Deed is clearly identified at the top of the Waiver by the following: (1) the Lender: Wells Fargo; (2) the Grantor: the Husband-Debtor; (3) the date the Husband-Debtor executed both the Security Deed and the Waiver (and the date the Affidavit was signed); and (4) the address of the property in which the Husband-Debtor was conveying an interest to Wells Fargo by means of the Security Deed. The fact that the Affidavit is on a different page than the actual Waiver is irrelevant and does not render *In re Kim* inapplicable to the case at hand. The Affidavit is part of the same document as the Waiver and is, therefore, incorporated into the Security Deed by the express language of the Waiver. Furthermore, the Affidavit refers specifically to the "above loan" between the Husband-Debtor and Wells Fargo and states that the Husband-Debtor executed the Security Deed in exchange for the loan. *See In re Kim*, 571 F.3d at 1347 n.8 ([T]he Affidavit is part of the last page of the Security Instrument, a single document consisting of the Security Deed and the Riders, recorded together in the deed book. It is obvious that the Affidavit is referring specifically to the Security Deed at issue in this case. . . ."). The Trustee argues that the Security Deed itself does not incorporate the Waiver or the Affidavit. The Court agrees that the Security Deed does not expressly incorporated the Waiver into it by listing the Waiver in its "Riders" definition section.[6] However, the failure to check off the box titled "Other" and then expressly list "Waiver of Borrower's Rights" in the definition section for "Riders" does not distinguish this case from *In re Kim* so as to render the Eleventh Circuit's holding inapplicable to the case at hand. By the Security Deed's definition of a "Security Instrument," the Waiver is a part of the Security Deed. The Security Deed defines "Security Instrument" as "this document, which is dated March 26, 2015, together with all Riders to this document." The Waiver is a rider attached to the Security

---

[6] The Security Deed indicates in subsection (G) of the Definitions section that "[t]he following Riders are to be executed by Borrower:" (1) the Adjustable Rate Rider; and (2) the VA Rider.

10

Deed and by its language is incorporated into the Security Deed.  The Waiver was recorded along with the Security Deed and the riders expressly listed in the "Riders" definition section of the Security Deed.  All of those documents, including the Waiver, make up a single security instrument.  For the foregoing reasons, the Court holds that at a minimum the Affidavit substantially complies with O.C.G.A. § 44-2-18 to cure any defect in the Security Deed caused by the absence of the date of Valadi's acknowledgment on the Security Deed.

Furthermore, the Court opines that the Affidavit satisfies the remedial statute to cure any defect caused by Valadi's signature even if her signature was interpreted to be an attempted attestation, as is required to be eligible for recordation under O.C.G.A. §§ 44-14-33 & 61 as amended.  The Court believes that the holding in *In re Kim* warrants such an outcome.  In a footnote, the Eleventh Circuit states, "We are not holding that the attestation or the notary's seal on the Affidavit substitutes for the necessary attestation in the Security Deed. We are holding that the Affidavit meets the requirements under [O.C.G.A.] § 44–2–18 to cure a defective attestation and that the Affidavit *testifies to both the execution and the attestation* of the Security Deed as required by the statute." *In re Kim*, 571 F.3d at 1346 n. 7 (emphasis added).  In other words, an affidavit cannot supplement a security deed to add a signature of an official witness who's signature is completely absent from the security deed. *See Gordon v. Wells Fargo Bank, N.A. (In re Knight)*, 504 B.R. 668, 673 (Bankr. N.D. Ga. 2014) (distinguishing *In re Kim* because, among other reasons, the closing attorney who signed the affidavit at issue did not sign the security deed).  However, the affidavit may testify to an already existing signature on the security deed to cure any defect in attestation because the affidavit itself testifies to the fact that the signing individual witnessed the execution of the security deed with its attestation. *In re Kim*, 571 F.3d at 1347.  In the case at hand, Valadi signed the Security Deed, albeit below the term

"Acknowledgment" on the page following the signature of the attesting unofficial witness. Therefore, there is a chain of signatures between the Security Deed and the Affidavit. Under the holding of *In re Kim*, the Affidavit signed by Valadi testifies to both the execution and the attestation of the Security Deed on March 26, 2015 and therefore, substantially complies with the requirements of O.C.G.A. § 44-2-18 to cure any defect in attestation caused by her signature appearing under the term "Acknowledgment." This interpretation of *In re Kim* does not extend the Eleventh Circuit's holding to extinguish the differences between the notarial acts of attestation and acknowledgment. Rather, the Court opines that the requirements of O.C.G.A. § 44-2-18 are substantially complied with when an affidavit, which testifies to the execution and attestation of a security deed, is incorporated into and recorded with a security deed and the affiant has signed both the security deed and the affidavit.

## Conclusion

The Court concludes that the Affidavit incorporated into and recorded with the Security Deed substantially complies with the remedial statute of O.C.G.A. § 44-2-18 to cure any defect in the acknowledgment of the official witness, Jennifer Valadi. Because the Affidavit cured such a defect, the Security Deed was eligible for recordation under Georgia law. Because the Security Deed was eligible for recording, its recordation provided constructive notice to subsequent bona fide purchasers. Therefore, the Trustee may not use his strong-arm powers pursuant to § 544 to avoid the Security Deed executed by the Husband-Debtor in favor of Wells Fargo.

An order will be entered on this date in accordance with this Memorandum Opinion.